**Reverse and Remand and Opinion Filed November 23, 2016**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-01038-CV

**KARLA C. LIANG, Appellant**
**V.**
**SHAWANNA EDWARDS, Appellee**

**On Appeal from the County Court at Law No. 4**
**Collin County, Texas**
**Trial Court Cause No. 004-00315-2014**

## MEMORANDUM OPINION

Before Justices Bridges, Lang-Miers, and Schenck
Opinion by Justice Bridges

This appeal arises from the underlying auto collision lawsuit in which a jury returned a verdict in favor of appellee Shawanna Edwards and awarded her $5,000 for past pain and suffering and $23,299.50 for past medical expenses. On appeal, appellant Karla C. Liang argues the trial court abused its discretion by admitting some of Edwards' Texas Civil Practice and Remedies Code section 18.001 billing records affidavits because she timely filed a counteraffidavit. Alternatively, Liang argues the record contains no competent evidence establishing that her negligence proximately caused all of Edwards' injuries and past medical expenses. We reverse the trial court's judgment and remand for a new trial.

**Background**

On March 27, 2012, Liang, traveling within the speed limit, hit Edwards' car. The responding officer prepared a report and determined Liang was the party at fault. Liang admitted Edwards did nothing wrong and she hit Edwards.

After the accident, Edwards' husband drove her home and she slept for several hours. Upon waking, she felt "groggy" with a headache. Her husband insisted she go to the emergency room. Doctors diagnosed her with a neck sprain and concussion. She was told to follow up with her physician. Two days later, she visited Dr. Joshua McFarland, a physical therapist and chiropractor. She received physical therapy from Dr. McFarland two to three times a week for four to six weeks. Her treatment included chiropractic adjustments and at-home therapies to reduce pain and muscle tension.

After finishing her treatment with Dr. McFarland, Edwards visited Dr. Arif Khan, a pain management specialist, on June 11, 2012. He provided one epidural steroid injection for the radiating pain she described as originating in her neck and sometimes moving down to her lower back and knee area. On July 3, 2012, Dr. Khan administered a second epidural steroid injection. She testified she still has pain "every now and then" and continues with therapies and massage therapy depending on her pain.

Edwards filed her original petition against Liang on March 5, 2014. Edwards filed various billing records affidavits pursuant to section 18.001 of the Texas Civil Practice and Remedies Code. Liang filed a counteraffidavit contesting the reasonableness and necessity of the past medical treatments. In the counteraffidavit, Dr. Robert G. Kadoko opined that, based on a review of Edwards' medical records, the epidural steroid injections she received and any chiropractic visits beyond six appointments were unnecessary and unreasonable because no documentation or testing confirmed she suffered from radiculopathy.

At trial, over Liang's objections, the trial court admitted Edwards' billing records affidavits. Other than her own testimony in which she said her medical treatments were necessary, Edwards provided no expert testimony as to the reasonableness and necessity of her medical treatment. Both parties presented portions of Dr. Kadoko's deposition testimony in which he provided the same opinions as in his counteraffidavit. At the conclusion of trial, the jury awarded Edwards $23,299.50 in past medical care expenses—the total amount represented in the billing records affidavits.

Liang filed a motion for judgment notwithstanding the verdict or, alternatively, motion for new trial in which she argued the trial court abused its discretion by admitting the billing records affidavits because she filed a counteraffidavit pursuant to section 18.001(e), (f). The trial court denied the motions. This appeal followed.

## Discussion

In her first issue, Liang contends the trial court abused its discretion by admitting some of Edwards' billing records affidavits because she timely filed a counteraffidavit. Liang argues that by timely filing a counteraffidavit, Edwards could not rely on her billing records affidavits and needed to provide expert testimony to prove her reasonable and necessary medical expenses. Edwards responds Liang's counteraffidavit was neither timely filed nor made by a person qualified to give such opinions; therefore, the trial court did not abuse its discretion by admitting them, and she was not required to provide expert testimony to prove her past medical expenses.

In a personal injury case, a claim for past medical expenses must be supported by evidence that (1) the plaintiff's injuries were caused by the defendant's negligence, and (2) the medical treatment was necessary and the charges for the treatment were reasonable. *See Texarkana Mem'l Hosp., Inc. v. Murdock*, 946 S.W.2d 836, 840 (Tex. 1997). A plaintiff can present evidence concerning the reasonableness and necessity of past medical expenses through

–3–

expert testimony or an affidavit from the plaintiff's medical provider made pursuant to section 18.001. *Whitaker v. Rose*, 218 S.W.3d 216, 223 (Tex. App.—Houston [14th Dist.] 2007, no pet.); TEX. CIV. PRAC. & REM. CODE ANN. § 18.001 (West 2015). The jury is not required to award a plaintiff the amount of damages established in the affidavit, but if it chooses to do so, the affidavit is sufficient evidence to support the jury's finding that past medical expenses were reasonable and necessary. *Id.*

If an opposing party intends to controvert a claim reflected in the initial affidavit, the opposing party must file a counteraffidavit. TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(e). The counteraffidavit must give reasonable notice of which claims the opponent intends to controvert and why, and it must be made by a person qualified to testify about the matters in dispute. *Id.* § 18.001(f). The party intending to controvert a claim in the affidavit must serve a copy of the counteraffidavit not later than thirty days after the day the party receives a copy of the affidavit and at least fourteen days before the day on which evidence is first presented at trial. *Id.* § 18.001(e)(1)(A), (B).

By filing a counteraffidavit, the nonoffering party can prevent the offering party's affidavits of reasonableness and necessity from being used as evidence. *See Hong v. Bennett*, 209 S.W.3d 795, 799 (Tex. App.—Fort Worth 2006, no pet.). Further, the nonoffering party can force the offering party to prove reasonableness and necessity of expenses by expert testimony at trial. *Id.*

Because section 18.001 is an evidentiary statute, a trial court's ruling in admitting or excluding such affidavits are reviewed under an abuse of discretion standard. *See Hong*, 209 S.W.3d at 799. We must uphold the trial court's evidentiary ruling if there is any legitimate basis in the record for the ruling. *Id.*

With these standards in mind, we begin by addressing the timeliness of the affidavits and counteraffidavit. Section 18.001(d) provides that a party offering the affidavit into evidence must serve a copy of the affidavit on the other party at least thirty days before evidence is first presented at trial. TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(d).

Here, the record contains many billing records affidavits from various medical providers[1]; however, Liang only challenges the billing records affidavits of Dr. Khan and Richardson Injury Clinic. We address each in turn.

Edwards argues Liang's time to file a counteraffidavit began to run on June 20, 2014, the date Liang received plaintiff's responses to request for disclosure, which included a CD labeled "Plaintiff's Responses to Request for Production RICHARDSON INJURY CLINIC RECORDS." However, the record does not contain copies of what information the CD contained. Instead, the record contains only a copy of the CD label. We cannot conclude a copy of a CD label is sufficient evidence that Liang received Richardson Injury Clinic's billing records affidavit on that day. Accordingly, Liang's time to serve a counteraffidavit did not begin to run on June 20, 2014. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(e)(1)(A) (party must serve counteraffidavit thirty day after party receives affidavit). The only other evidence in the record indicating when Edwards served her billing records affidavit for Richardson Injury Clinic and when Liang received it is the February 24, 2015 electronic copy filed with the court.[2] Thus, Liang had thirty days from February 24, 2015 to serve a counteraffidavit.

---

[1] These medical providers include: (1) EMcare, (2) Dr. Bruce Cheatham, (3) DFW Open MRI, (4) Methodist Richardson Medical Center, and (5) Methodist Richardson. Although Liang objected to the admission of these affidavits in the trial court, she does not challenge them on appeal. Thus, the jury was presented with evidence of Edwards' medical expenses from these providers.

We note the electronic receipts for these documents state these filings were rejected because they did not have the complete style of the case and/or cause number at the top. However, the receipt also indicates in the "eService Details" that the documents were sent, served, and opened by defense counsel on January 27, 2015. Further, per Texas Rule of Civil Procedure 21a(3), electronic service is complete on transmission of the document to the serving party's electronic filing service provider. TEX. R. CIV. P. 21a(3).

[2] Interestingly, the execution date of the affidavit is November 2, 2014, further indicating the affidavit could not have been included on the CD produced in discovery because it had not yet been created.

–5–

As to Dr. Khan, the record indicates his medical records affidavit was executed on November 14, 2014 and therefore not included in Edwards' June 20, 2014 discovery responses. Rather, the record shows Edwards electronically filed a copy of Dr. Khan's billing records affidavit on February 24, 2015. Thus, to timely serve a counteraffidavit responding to Dr. Khan, Liang also had thirty days from February 24, 2015 (making both counteraffidavits due March 26, 2015). *Id.* § 18.001(e)(1)(A). Liang served Dr. Kadoko's counteraffidavit on March 25, 2015. But our analysis does not end here.

In addition to filing the counteraffidavit within thirty days of receiving the billing records affidavits, section 18.001 also requires a counteraffidavit be served at least fourteen days before evidence is presented at trial. *Id.* § 18.001(e)(1)(B). At the time Liang filed her counteraffidavit on March 25, 2015, the trial was set for March 30, 2015; therefore, Liang filed a motion for leave to file counteraffidavits pursuant to section 18.001(e)(2). *See id.* § 18.001(e)(2) (party may file counteraffidavit with leave of court at any time before the commencement of evidence at trial). The trial court did not rule on Liang's motion for leave; however, the motion became moot after the trial court rescheduled the trial to May 18, 2015.

Once the trial court reset the trial to May 18, 2015, Liang's counteraffidavit was timely filed under section 18.001. To summarize, Liang filed her counteraffidavit on March 25, 2015, which was within thirty days of receiving Edwards' February 24, 2015 affidavits for Dr. Khan and Richardson Injury Clinic, *and* it was filed fourteen days before evidence was first presented at trial thereby meeting both timing requirements under section 18.001.

Despite Liang timely filing her counteraffidavit, Edwards argues the trial court did not abuse its discretion by admitting her affidavits because Liang made only general pretrial objections to Edwards' affidavits, which were insufficient to inform the trial court of her complaints. We are unpersuaded by Edwards' arguments. First, Edwards has failed to provide

any authority to support her claim that a party opposing a section 18.001 affidavit must do anything more than file a counteraffidavit to inform the trial court of her objection to the original affidavit. As Liang argues, "the opponent's counteraffidavit serves as the 'objection' to the proponent's controverted section 18.001 billing affidavits, and no further objection is necessary."

Further, to preserve an issue for review, a party must make a timely request, objection, or motion that puts the trial court on notice with sufficient specificity of her complaint. TEX. R. APP. P. 33.1. Here, the record shows that in addition to filing the counteraffidavit, Liang raised her objections to the billing records affidavits prior to voir dire. However, the trial court denied Liang's request to exclude Edwards' billing records affidavits without further explanation. Liang objected again when Edwards introduced Dr. Khan's and Richard Injury Clinic's billing records affidavits into evidence. The trial court overruled her objections.

Although Edwards asserts Liang's general objections to all the billing records affidavits did not inform the trial court of the specific affidavits she now challenges on appeal, Liang has simply presented a narrower scope of the argument she raised to the trial court—that she timely filed a counteraffidavit challenging Dr. Khan's and Richardson Injury Clinic's affidavits thereby forcing Edwards to present expert testimony of her reasonable and necessary past medical expenses. Liang has not presented a broader or different argument, which would violate the preservation rules. *See, e.g., Crews v. Dkasi Corp.*, 469 S.W.3d 194, 201 (Tex. App.—Dallas 2015, pet. denied) (party must timely raise objection to trial court to preserve issue for appellate review); *Cunningham v. Hughes & Luce, L.L.P.*, 312 S.W.3d 62, 71 (Tex. App.—El Paso 2010, no pet.) (issue not preserved for review when objection at trial did not comport with challenge on appeal). Thus, Edwards' preservation argument is without merit.

We likewise reject Edwards' argument that Liang filed an insufficient counteraffidavit under section 18.001(f). Edwards did not object to Dr. Kadoko's qualifications during pretrial

discussions, and she did not object when the trial court later admitted Dr. Kadoko's expert report during trial, which contained the same opinions as his counteraffidavit. Because Edwards did not raise this objection to the trial court, she may not now raise it on appeal. TEX. R. APP. P. 33.1; *see, e.g., Ozlat v. Priddy*, No. 11-96-240-CV, 1997 WL 33798173, at *3 (Tex. App.—Eastland May 29, 1997, writ denied) (party's objection to counteraffidavit was not preserved when party raised different complaint on appeal than that raised to trial court).

After considering both party's arguments, we conclude Liang's counteraffidavit complied with section 18.001. Because Liang complied with the statute, the trial court abused its discretion by admitting Edwards' billing records affidavits for Dr. Khan and Richardson Injury Clinic in lieu of requiring Edwards to provide expert testimony at trial as to those reasonable and necessary past medical expenses. *See Hong*, 209 S.W.3d at 804.

Having determined the trial court abused its discretion by admitting the billing records affidavits in lieu of expert testimony, we must determine whether the error is reversible. TEX. R. APP. P. 44.1. We will not reverse a trial court's judgment because of an erroneous evidentiary ruling unless the ruling probably caused the rendition of an improper judgment. *Id*. at 805. We examine the entire record in making this harm determination. *Id*.

From the beginning of trial, Edwards emphasized the importance of the medical bills. During voir dire, Edwards asked jurors if they could look at medical records and medical bills "on their face and make a determination based on what's presented." During opening statements, Edwards' counsel discussed the steroid injections she received and emphasized Liang "paid [Dr. Kadoko] money to tell you that [Edwards] didn't need the treatment she received."

As part of her defense, Liang presented portions of Dr. Kadoko's deposition testimony for the jury. Dr. Kadoko testified he is a board-certified orthopedic surgeon who treats diseases of the bones, tendons, and ligaments. He reviewed Edwards' medical records. The records from

the emergency room right after the accident, which included x-rays of her cervical spine and the CT scan of her head and cervical spine, showed no evidence of trauma. Dr. McFarland's notes stated she had "no radiation of pain into the extremities." Although Dr. Kadoko found no explanation of a final diagnosis or treatment plan for Edwards in Dr. McFarland's medical notes, Dr. McFarland later referred Edwards to Dr. Khan. Dr. Khan ordered cervical epidural steroid injections, which is normally prescribed to treat pain caused by a nerve or the spinal cord being pinched (a condition called radiculopathy). However, Dr. Kadoko testified a cervical epidural steroid injection would not be reasonable for a patient who has no symptoms of radiculopathy. Dr. Kadoko reviewed Edwards' records and concluded, "There was no objective evidence of radiculopathy." Without objective evidence of radiculopathy from any of her physicians' records, Dr. Kadoko opined it was not reasonable for Dr. Khan to prescribe the two steroid injections.

Dr. Kadoko believed the accident caused Edwards to suffer a cervical sprain, a thoracic sprain, and a lumbar sprain. He considered these "self-limiting" injuries, meaning they can be "really painful but if you just leave them alone and keep the patient out of trouble, they will heal and won't ultimately affect their function." He stated such injuries do not require future medical treatment. Based on his experience with such injuries, he concluded Edwards' medical records supported only six chiropractic visits between April 2012 and June 2012 rather than the twenty-four she received. Thus, he testified any visits beyond six were unreasonable and unnecessary.

Edwards then read portions of Dr. Kadoko's deposition as rebuttal testimony. However, none of the portions read to the jury addressed or contradicted Dr. Kadoko's opinions that the two steroid injections were unnecessary and unreasonable because there was no objective evidence of radiculopathy or that any chiropractic visits beyond six were unnecessary and unreasonable. Rather, Edwards emphasized Dr. Kadoko was a paid medical expert, who

routinely testified for defense attorneys. Edwards also emphasized Dr. Kadoko's testimony in which he said he was not an expert on billing or charging medical services. However, Dr. Kadoko was not designated to be an expert on medical billing, but instead was designated to provide a medical expert opinion about the reasonableness and necessity of medical treatment. He provided such an opinion. Accordingly, none of this testimony served to rebut Dr. Kadoko's opinions that Edwards' received some unnecessary and unreasonable medical care resulting in unnecessary expenses.

During closing argument, Edwards' counsel argued, ". . . you can look at those affidavits, and you can add them up yourself." The jury awarded the exact amount ($23,299.50) of all of Edwards' medical billing affidavits, including the two improperly admitted affidavits. Thus, the award of past medical expenses turned on this particular erroneously admitted evidence. Consequently, the admission of Dr. Khan's and Richardson Injury Clinic's affidavits probably caused the rendition of an improper verdict because without that evidence, Edwards failed to meet her burden of proof that all of her past medical expenses were reasonable and necessary. Accordingly, the trial court's error was harmful. *See* TEX. R. APP. P. 44.1; *see also Henderson v. Spann*, 367 S.W.3d 301, 304 (Tex. App.—Amarillo 2012, pet. denied) ("[W]hen, as a consequence of the trial court's evidentiary rulings, there is no evidence of past medical expenses, a judgment awarding past medical damages is improper."). We sustain Liang's first issue. We need not address Liang's alternative argument in which she asserts the record contains no competent evidence establishing that her negligence proximately caused all of Edwards' injuries and past medical expenses. TEX. R. APP. P. 47.1.

Although we have concluded the record cannot support the jury's entire award of past medical expenses, the judgment is supported by some evidence in the record—specifically, the section 18.001 affidavits Edwards introduced into evidence and Liang has not challenged on

appeal. Thus, the proper remedy is to reverse the judgment and remand this case for a new trial. *See Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 682 (Tex. 2000) (concluding remand for a new trial was appropriate remedy when there was evidence of some fraud damages but there was no evidence to support the full damage amount found by jury); *Adley v. Privett*, No. 05-12-01581-CV, 2014 WL 3371920, at *3 (Tex. App.—Dallas July 9, 2014, no pet.) (mem. op.).

## Conclusion

Because the trial court committed harmful error by admitting the section 18.001 affidavits of Dr. Khan and Richardson Injury Clinic and Edwards provided no evidence through expert testimony to support the jury's full award of past medical expenses totaling $23,299.50, we reverse the trial court's judgment and remand this cause for a new trial.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

151038F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KARLA C. LIANG, Appellant

No. 05-15-01038-CV        V.

SHAWANNA EDWARDS, Appellee

On Appeal from the County Court at Law No. 4, Collin County, Texas
Trial Court Cause No. 004-00315-2014.
Opinion delivered by Justice Bridges.
Justices Lang-Miers and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for a new trial.

It is **ORDERED** that appellant KARLA C. LIANG recover her costs of this appeal from appellee SHAWANNA EDWARDS.

The obligations of Employers Insurance Company of Wausau as surety on appellant's supersedeas bond are **DISCHARGED**.

Judgment entered November 23, 2016.