# Supreme Court of Texas

No. 23-0953

Tatia Ortiz,
*Petitioner*,

v.

Ramu Nelapatla,
*Respondent*

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

JUSTICE SULLIVAN, dissenting.

With Section 18.001 of the Civil Practice and Remedies Code, the Legislature opened a limited exception to two general rules. The first rule is that affidavits are inadmissible hearsay. The second is that a party needs something more than copies of medical bills to prove up medical expenses; usually, perhaps always, that something is expert testimony. Section 18.001 cuts through both rules, allowing claimants to prove the necessity and reasonableness of their medical expenses by affidavit—"[*u*]*nless a controverting affidavit is served*." Tex. Civ. Prac. & Rem. Code

§ 18.001(b) (emphasis added). This case is about the scope of that italicized exception-to-the-exception.

The *unless* clause was met here. Ramu Nelapatla served a controverting affidavit, so Tatia Ortiz was required to follow the two general rules: she can't rely on hearsay, and she must submit more than medical bills. Because Ortiz didn't have the goods, the district court didn't err in refusing to give her a new trial on damages and preventing her from relying on the hearsay affidavits.

The Court reads the *unless* clause differently. Though the Court concedes that Nelapatla served a controverting affidavit, it gives great weight to the fact that this counteraffidavit didn't controvert every one of Ortiz's claims. According to the Court, this means the uncontroverted portions of Ortiz's affidavits were still admissible. That may be good policy, but that's not how I read the statute. It doesn't say, for example, that affidavits are admissible "unless a counteraffidavit is served that contests the affidavit in full." Language like that would call for deciding admissibility claim by claim, not affidavit by affidavit. But the statute speaks of the admissibility of "affidavits," not of claims.

I agree with the Court that this system doesn't make a great deal of sense. Section 18.001's all-or-nothing approach creates strange results. A defendant need only contest a single dollar or line item in a medical bill to force his opponent to spend untold

sums on experts defending the entire affidavit, even if most of the claims contained in the affidavit are uncontroverted. That means juries will have to hear expert testimony about the reasonableness and necessity of charges that no party contests. It's also strange that a plaintiff *would* be able to rely on Section 18.001 if they filed a different affidavit for each charge, and the defendant controverted only one of them. But it's not our role to repair a statutory scheme the Legislature has built. Our task is to apply the text as written, and the statute withdraws the hearsay exception "to an affidavit" if it's controverted—not a "claim" or a "part" or a "matter." Reluctantly and respectfully, I dissent.

## I

To understand why Section 18.001 exists, it helps to put it in historical context. Since time out of mind, we've said that it's not enough for plaintiffs to submit their medical bills. To prove that the medical services rendered were reasonable and necessary, something more is required. *See Dall. Ry. & Terminal Co. v. Gossett*, 294 S.W.2d 377, 383 (Tex. 1956); *Wheeler v. Tyler Se. Ry. Co.*, 43 S.W. 876, 877 (Tex. 1898); *Hou. E. & W. Tex. Ry. Co. v. Jones*, 1 S.W.2d 743, 748–49 (Tex. App.—Beaumont 1927, writ ref'd). More recently, we've gone so far as to suggest that only one form of evidence will suffice: expert testimony. *See In re Allstate Indem. Co.*, 622 S.W.3d 870, 876 (Tex. 2021) (citing *Hong v.*

3

*Bennett*, 209 S.W.3d 795, 801 (Tex. App.—Fort Worth 2006, no pet.)).[1]

With that background in mind, the need for Section 18.001 is clear. Proving one's medical expenses is not always easy, and we've only made it more difficult over time. Section 18.001

---

[1] The expert requirement described in *Allstate* is probably dicta. At issue there was whether a counteraffidavit complied with Section 18.001(f). 622 S.W.3d at 877. Because we decided only what was necessary to satisfy Section 18.001, any discussion of what the plaintiff would've needed to prove if Section 18.001 didn't apply was dicta. *See Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 406 (Tex. 1997).

Dicta or no, it seems to me that *Allstate* was probably wrong. Our aside in that case was offered with little to no explanation, citing only a court of appeals opinion, with no rationale for why that court was right that expert testimony was always required. *See* 622 S.W.3d at 876 (citing *Hong*, 209 S.W.3d at 801). True, we've previously said that expert testimony may at least sometimes be necessary to determine medical expenses. *See, e.g.*, *Texarkana Mem'l Hosp., Inc. v. Murdock*, 946 S.W.2d 836, 841 (Tex. 1997); *Gunn v. McCoy*, 554 S.W.3d 645, 672 (Tex. 2018). But our earlier cases never said that expert testimony was required as a matter of law. At most, each indicated that because the issues were complex and beyond the ken of a lay juror, experts were necessary in that particular case. *See Texarkana Mem'l. Hosp.*, 946 S.W.2d at 841 (requiring expert testimony about meconium aspiration). There's nothing magical about medical treatments; damages issues outside the personal-injury context may also be so complex as to render expert testimony necessary. Surely a jury can decide whether $400 spent to set a broken arm was reasonable and necessary without hearing from an expert.

A rule like that might so intrude on the jury's exclusive function as the finder of fact as to raise constitutional problems. *Cf. Stephens v. State*, 774 P.2d 60, 67 (Wyo. 1989) ("A clear delegation of the decision of the jury to the expert witnesses surely would deprive a defendant of his constitutional rights to a jury trial."), *overruled on other grounds by Large v. State*, 177 P.3d 807 (Wyo. 2008). While I'm open to contrary originalist research, I doubt that experts were required to recover medical expenses in 1876 when we adopted the twin civil jury-trial rights. *See* Tex. Const. arts. I, § 15, V § 10. This issue is not presented in this case, so I do not suggest that the Court ought to reach it here.

provides a (potentially) less complicated avenue to prove these expenses. Section 18.001(b) allows a claimant to provide an uncontroverted affidavit that is "sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary." Tex. Civ. Prac. & Rem. Code § 18.001(b). The statute further allows a non-claimant to serve a counteraffidavit to challenge "all or part of any of the matters contained in the initial affidavit." *Id.* § 18.001(f). If they do so, "the claimant may not reach the jury on the reasonableness and necessity of her medical expenses." *In re Chefs' Produce of Houston, Inc.*, 667 S.W.3d 297, 301 (Tex. 2023) (per curiam). This is consistent with the text of Subsection (b), which says that an affidavit may be sufficient evidence, "[*u*]*nless* a controverting affidavit is served as provided by this section." Tex. Civ. Prac. & Rem. Code § 18.001(b) (emphasis added).

## II

The plain text of this statute does not allow partial admission of partially controverted affidavits. Section 18.001 says that medical damages affidavits are admissible "unless a controverting affidavit is served as provided by this section." *Id.* In other words, the Section 18.001 exception to hearsay doesn't apply if the affidavit is controverted.

The Court says things aren't so simple. It reasons that Section 18.001's exception-to-the-exception does not operate on the

5

affidavit as a unit, but on the discrete "matters" and "claims" embedded within it. Because the statute permits a counteraffidavit to be made "in contravention of all or part of any of the matters contained in the initial affidavit," the Court reasons that a compliant counteraffidavit disables the statutory hearsay exception only for those "parts" that the counteraffidavit actually reaches. From that premise, the Court constructs an item-by-item admissibility regime: Where a defendant's expert contests only certain services, line items, or components of the affidavit's attestation, the affidavit remains admissible as to everything the counteraffidavit left untouched.

The Court puts great weight on Subsection (f), which requires the counteraffiant to be "qualified . . . to testify in contravention of *all or part* of any of the *matters* contained in the initial affidavit." *Id.* § 18.001(f) (emphases added). But Subsection (f) speaks to a different issue than Subsection (b). If anything, Subsection (f) undermines the Court's argument because it shows that the Legislature knew how to differentiate between an "affidavit" and the "claims" or "matters" as to which the affidavit opines. If the Legislature wanted the Court's preferred result, all it would have to do is swap the word "affidavit" for one of these narrower terms. Subsection (b) instead uses the broader term, which means that courts must consider Section

6

18.001's applicability affidavit by affidavit, not claim by claim (or matter by matter).

But don't take my word for it. A few years ago, we described what happens when a party files a compliant counteraffidavit: "In the face of a compliant counteraffidavit, the claimant may not reach the jury on the reasonableness and necessity of her medical expenses without expert testimony. In effect, the claimant's evidentiary burden on that issue is the same as if the initial affidavit had never been served." *Chefs' Produce*, 667 S.W.3d at 301. Moreover, the counteraffidavit in *Chefs' Produce* challenged only portions of the plaintiff's medical costs, so this language was no mere throwaway line. The Court insists that "[n]othing in *Chefs' Produce* compels the conclusion that the admissibility of affidavits and counteraffidavits cannot be determined at a claim-by-claim level." *Ante* at 10 n.5. I don't see any other way of reading our opinion in *Chefs' Produce*.

To be sure, it seems unfair (and a bit bizarre) that a defendant could frustrate Section 18.001's application to a million-dollar claim by controverting a single penny from each affidavit. But we're in the law business, so our job is "to apply the statute as it is written—even if we think some other approach might 'accor[d] with good policy.'" *Burrage v. United States*, 571 U.S. 204, 218 (2014) (quoting *Commissioner v. Lundy*, 516 U.S. 235, 252 (1996)). And even were we tasked with deciding cases based on efficiency,

the Court's legislative rewrite effects at best a partial cure. Even on its claim-by-claim reading, all a defendant has to do is partially controvert each *claim*. It's not too hard to rustle up a so-called expert who'll say just about anything in exchange for enough money. Consider an affidavit that supports claims for three charges, and a counteraffidavit that says each service exceeded the usual and customary cost by 10%. Even though 90% of the damages are uncontroverted, the Court's approach would still require expert testimony as to every claim.

Indeed, a claim-by-claim approach could easily yield its own absurdities. Plaintiffs may well respond to the Court's opinion by making each "claim" as granular as possible. Instead of submitting a single bill for surgery, plaintiffs could ask their medical provider to split up the bill into many tiny pieces: one for pre-operative consultations, one for the surgery itself, another for any medications received while in inpatient care, another for painkillers purchased from a pharmacy, one for the first four weeks of physical therapy, and another for the rest of the physical therapy (perhaps with a new provider to make the game less obvious). Nothing in the statute (or the Court's opinion) describes the proper level of generality at which to define a claim, and so nothing prevents plaintiffs from getting as granular as possible. The defendant, in turn, will have to follow the Pokémon creed—

8

"gotta catch 'em all."[2]  If one claim (however narrowly defined) isn't controverted (even just a little), then the plaintiff can use the Section 18.001 procedure.

There are a variety of plausible policies, each with their own pros and cons.  One, of course, is to go claim-by-claim like the Court suggests.  Perhaps better still would be something analogous to how insurance disputes work.  Under such a system, the jury could award the uncontroverted *amount* but no more absent expert testimony.  So even if the defendant found a way to flyspeck every claim, if it could find an expert willing to controvert only 30% of the total damages figure, the plaintiff could recover only 70% without an expert.  Or the Legislature could do away with the requirement for expert testimony altogether (assuming such a requirement exists).  Or maybe we could go halfway there and only get rid of the requirement for certain types of claims (does a jury really need to hear from a $1000-an-hour expert to decide that a $400 bill for setting a broken arm was reasonable?).  Or perhaps the Legislature could conclude that the statute it passed struck exactly the right balance between fairness and administrability, and that it's better to have parties abide by the default rules whenever reasonableness or necessity are controverted.

---

[2] Pokémon Theme (CD, Robbins Entertainment, Oct. 26, 1999).

But however interesting these debates are, they don't really matter. Because what matters to me is that the Legislature decided, not that it decided correctly, I respectfully dissent.

James P. Sullivan
Justice

**OPINION FILED:** May 1, 2026